UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| REAGAN FOLMAR, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | **Civil Action No. H-09-3647** |
| | § | |
| TERRA RENEWAL, LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Terra Renewal, LLC's ("Terra") Motion for Summary Judgment (Doc. No. 18).

Upon considering the Motion, all responses thereto, and the applicable law, the Court finds that Defendant's Motion must be denied.

**I.     BACKGROUND**

This case arises from Terra's agreement with Plaintiff Reagan Folmar ("Plaintiff" or "Folmar") to spread wastewater over Folmar's land and subsequent damage to the land. Folmar owns a 150-acre farm in Waller County, Texas. (Doc. No. 18, Ex. A at 3; Folmar Dep. 7:5-7.) Terra is a wastewater residuals service provider that accepts wastewater residuals from companies and disposes of the water appropriately. (Doc. No. 18, Exh. B at 26.) Terra approached Cody Dennison ("Dennison"), an extension agent with Waller County AgriLife Extension, for assistance in finding landowners who might be interested in accepting wastewater for disposal upon their land. (Doc. No. 18, Ex. E at 2.) Dennison provided Terra with Folmar's name and contact information. (*Id.*) Folmar and Terra entered into an agreement whereby Terra

would spread rice wastewater taken from Riviana Foods, a food processing company, upon Folmar's land. (Folmar Depo. 11:8-10.)

Terra began applying rice wastewater to Folmar's land in summer 2006. (Brooks Aff. ¶ 7; Folmar Depo. 11:21-12:9.) Within a few days of the first application, Folmar noticed grass dying where the wastewater had been spread. (Folmar Depo. 12:3-5.) Over the next several months, Folmar contacted Terra's representatives to complain about the dying grass and that rice solids in the waste attracted feral hogs, which damaged his fences and his land. (*Id*. 12:6-9) Folmar also spoke about the damage to the grass with Dennison, who took soil samples for chemical analysis. (*Id.* 13:1-17; Dennison Dep. 32:18-24.). In response to Folmar's complaints, Terra used tractors to disk the land after the wastewater application. (*Id.* 24:13-23.) Disking the land was intended to prepare the land for planting and to restore it to its former condition. (Folmar Dep. 24:20-21; Dennison Dep. 33:7-10, 19-20.) However, Terra did not properly finish disking the land, which remained bumpy. (Folmar Dep. 24:13-16; 25:24-26:8.) Terra stopped spreading rice wastewater over Folmar's land in July 2007. (Brooks Aff. ¶ 7.) At some point, Terra made a delivery of grass seed to Folmar. (Brooks Aff. ¶ 24; Folmar Dep. 57:9-13; Dennison Dep. 50:11-15.)

Separately, Folmar reached an agreement with Terra and a drilling company named Lone Wolf regarding degradation that occurred on a gravel road running through his property. (Folmar Dep. 19:9-14.) Folmar believed that Terra's trucks had damaged the road as they delivered wastewater. (*Id.* 19:19-21.) Lone Wolf had used the road when they entered and left Folmar's property. (*Id.* 20:1-21.) Terra and Lone Wolf agreed to each pay $4,500 to a contractor named Manuel Munoz, who would repair the road. (*Id.* 20:22-21:5.) Munoz absconded with the money and never repaired the road. (*Id.* 23:7-9.)

Folmar eventually had a meeting on his farm with two Terra Representatives, Michael Brooks and Tim Stewart, in late summer 2008. (Folmar Depo. 30:1-6; Brooks Aff. ¶ 16.) Dennison also participated in this meeting. (Folmar Depo. 30:1-6.) The four toured Folmar's property and discussed the damage. (*Id.*) Dennison offered to provide Terra with quotes for sprigging the ground with grass seed, and subsequently provided those quotes in September or October 2008. (*Id.* 30:18-21; Dennison Dep. 56:13-15.)

In October or November 2008, Brooks, acting on behalf of Terra, spoke to Folmar about settling his claims against Terra. (Brooks Aff. ¶ 21.) Under the terms of the settlement offer, Folmar would fully and finally settlement all claims against Terra in exchange for (1) $28,000; (2) grass seed; and (3) proceeds from a criminal case against Munoz. (Brooks Aff. ¶¶ 11-13, 20.) Folmar did not accept this offer. (Folmar Depo. 66:4-10; Doc. No. 18, Ex. F.)

On December 9, 2008, Dennison sent a letter via facsimile to Terra without Folmar's knowledge. (Dennison Dep. 62:18-21; Folmar Depo. 32:24-33:7; Doc. No. 18, Ex. E.) Dennison stated that the letter was "to request for an immediate settlement for Mr. Reagan Folmar's agreement with [Terra] and Riviana Foods in Houston, TX." (Doc. No. 18, Ex. E at 2.) Dennison described damage allegedly caused by Terra's activities and Folmar's difficulties in obtaining relief from Terra. (*Id.*) Dennison "suggested" that Terra settle with Folmar by December 19, 2008, or Dennison would advise Folmar to seek legal counsel. (*Id.* at 3.) In response, Brooks sent an email to Dennison on December 10, 2008. (Doc. No. 18, Ex. F.) In this email, Brooks stated that Terra's original settlement offer to Folmar would continue to stand until December 17, 2008. (*Id.*; Brooks Aff. ¶ 22.) After receiving Brooks's email, Dennison spoke with Folmar about it. (Folmar Depo. 34:12-15; Dennison Dep. 67:14-16.) On December 20, 2008, Dennison replied by email to Brooks, stating that he had spoken to Folmar and that

3

Folmar "agreed to put this behind us and settle with you (based on the e-mail below). I hope this brings a welcomed close to this situation for you, Reagan, and me." (Doc. No. 18, Ex. G.)

In June 2009, Folmar's counsel sent a letter to Terra, demanding approximately $200,000 for field restoration, fence repair and road resurfacing. (Doc. No. 18, Ex. H.) Folmar subsequently filed suit against Terra in state court, alleging default and breach of contract due to the alleged damage caused by Terra's disposal of wastewater upon his land. Terra removed the case to this Court on the basis of diversity jurisdiction and filed a counter-claim against Folmar for breach of contract. Specifically, Terra alleged that it had entered into a valid and enforceable settlement agreement with Folmar, who breached the agreement by failing to accept Terra's payment under the settlement agreement and filing suit. Terra has now moved for summary judgment on its counter-claim for breach of contract. The motion has been briefed and is ripe for disposition.

## II.   LEGAL STANDARDS

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also U.S. v. Arron*, 954 F.2d 249, 251 (5th Cir. 1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *See Anderson*, 477 U.S. at 248. If the

evidence rebutting the motion for summary judgment is only colorable or is not significantly probative, summary judgment should be granted. *See id*. at 2511; *see also Thomas v. Barton Lodge, Ltd*., 174 F.3d 636, 644 (5th Cir. 1999).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial*." *Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)); *see also Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *see Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 477 U.S. at 242; *see also Thomas v. Price*, 975 F.2d 231, 235 (5th Cir. 1992) (stating that "[t]o avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue").

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp*., 207 F.3d 776, 781 (5th Cir. 2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

Terra seeks summary judgment on its counterclaim against Folmar for breach of the settlement agreement allegedly reached by the parties. Folmar responds that genuine issues of material fact exist as to the existence of a valid contract, namely whether Terra's settlement offer was ever accepted by Folmar. Specifically, Folmar challenges Dennison's acceptance of Terra's settlement offer on his behalf, arguing that Dennison did not have authority to act as his agent. We first review whether Dennison acted as Folmar's agent in settlement negotiations and acceptance of the settlement offer, and then whether a valid settlement agreement exists.

### A. Principal—Agent Relationship

Terra contends that Dennison acted as Folmar's agent when Dennison accepted the settlement offer by way of email on December 20, 2008. Folmar contests both the agency relationship and any alleged ratification of the settlement agreement.

A principal is liable for the acts of its agent when the agent has actual or apparent authority to do those acts or when the principal ratifies those acts. *Spring Garden 79U v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.—Houston 1994, no pet.). The law does not presume agency. *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 22 (Tex. App.—San Antonio 2006, pets. denied). The party alleging agency has the burden to prove its existence. *Id.*

#### 1. Actual Authority

Actual authority includes both express and implied authority and usually denotes the authority a principal (1) intentionally confers upon an agent, (2) intentionally allows the agent to believe he possesses, or (3) by want of due care allows the agent to believe he possesses. *Tex. Cityview Care Ctr., L.P. v. Fryer*, 227 S.W.3d 345, 352 (Tex. App.—Fort Worth 2007, pet dism.). Actual authority is created through conduct of the principal communicated to the agent. *Lifshutz*, 199 S.W.3d at 22.

6

Terra argues that Folmar conferred actual authority upon Dennison to accept the December 2008 settlement offer through both express statements to Dennison and conduct that allowed Dennison to believe that he had agent authority. However, the summary judgment record reflects that Folmar and Dennison deny that Folmar ever made express statements intentionally conferring upon Dennison authority to accept the settlement offer. (Dennison Dep. 67:21-23, 71:2-4, 74:1-3; Folmar Dep. 33:2-4, 35:2-4.) Dennison acknowledges that, when discussing Brooks's December 10, 2008 email, Folmar was dissatisfied with Terra's offer regarding repair of his road because Folmar did not believe the Munoz case would ever yield monetary proceeds. (Dennison Dep. 70:15-21; Folmar Dep. 34:16-22, 35:22-36:1.) Therefore, Dennison took away from his phone conversation with Folmar that the situation was "moving in the right direction," but that Folmar "had to look at it." (Dennison Dep. 67:23; Folmar Dep. 36:2-6.) This evidence indicates that Folmar did not tell Dennison that Dennison could accept the settlement offer on his behalf. *See Ebner v. First State Bank of Smithville*, 27 S.W.3d 287, 301 (Tex. App.—Austin 2000, pet. denied) (holding that fact issues existed where executrix and her attorneys both denied that attorneys had authority to settle a lawsuit involving estate).

Neither does the summary judgment evidence clearly establish that Folmar, through his conduct, intentionally allowed Dennison to believe that he had authority to accept the December 2008 settlement offer. In his deposition, Dennison stated that he did not recall Folmar explicitly agreeing to the settlement offer, but that Folmar "led me to believe that, I guess. I guess that's why I put it in the e-mail." (Dennison Dep. 70:22-25.) However, Folmar claims that he was clear that the settlement offer was not adequate because it did not properly compensate him for his road. (Folmar Dep. 34:20-22, 36:2-6.) Folmar's deposition testimony suggests that the requisite "meeting of the minds" did not exist between Folmar and Dennison to create the

7

agency. *See A & S Electrical Contractors, Inc. v. Fischer*, 622 S.W.2d 601, 603-04 (Tex. App.—Tyler 1981, no pet.) (holding that fact issue existed where principal's affidavit did not state facts "showing that there was any meeting of the minds between himself and appellees on the idea of a principal-agent relationship, or that there was any intent to create one.").

Folmar's requests to Dennison to take soil samples and to be present during the late summer 2008 tour of his property with Terra representatives are not sufficient to confer actual authority upon Dennison to accept the December 2008 settlement offer. Folmar would be liable for Dennison's acceptance of the settlement offer only if Dennison had actual or apparent authority to perform *that* act. *See Spring Garden 79U*, 874 S.W.2d at 948. Authority conferred upon Dennison to take soil samples, tour the property, and provide resprigging estimates does not also confer authority to accept the December 2008 settlement offer. Neither can Dennison's December 9, 2008 letter to Terra be taken as evidence of Dennison's actual authority because Dennison admits that he sent the letter on his own initiative, without Folmar's direction, knowledge or permission. (Dennison Dep. 62:18-21; Folmar Dep. 32:24-33:4.)

Taking the evidence favorable to Folmar as true, as we must, we hold that there are disputed fact issues as to whether Dennison had actual authority to bind Folmar to the settlement agreement.

### 2. Apparent Authority

Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal that clothe the agent with the indicia of apparent authority. *Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998). *Lifshutz*, 199 S.W.3d at 22. Apparent authority is created through conduct of the principal communicated to a third party. *Lifshutz*, 199 S.W.3d at 22; *Spring Garden 79U*, 874 S.W.2d 945 at 950. Certain limitations apply in

determining whether apparent authority exists. *Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex. App.—Houston 2000, no pet.). First, one who seeks to bind a principal based on the apparent authority of its agent must show that the principal acted in such a way that a reasonably prudent person would believe that the agent had the authority to act as he did. *Biggs v. United States Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981). Only the conduct of the principal may be considered; representations made by the agent of his authority have no effect. *Suarez*, 35 S.W.3d at 272; *Disney Enterprises*, *Inc.*, 981 S.W.2d 25, 30 (Tex. App.—San Antonio 1998, dism. w.o.j.). Second, the principal must either have affirmatively held the agent out as possessing the authority or the principal must have knowingly and voluntarily permitted the agent to act in an unauthorized manner. *Suarez*, 35 S.W.3d at 272. Finally, a party dealing with an agent must ascertain both the fact and the scope of the agent's authority, and if the party deals with the agent without having made such a determination, she does so at her own risk. *Suarez*, 35 S.W.3d at 272; *Disney Enterprises*, *Inc.*, 981 S.W.2d at 30.

      Terra contends that Folmar's conduct and communications toward Terra's representatives indicated that Dennison possessed the authority to engage in settlement negotiations with Terra and ultimately to accept the December 2008 settlement offer. To support its argument, Terra points out that Folmar asked Dennison to call Sam Swint, a Terra employee, in late 2007 or early 2008 because Swint was no longer returning Folmar's phone calls. (Dennison Dep. 45:7-16.) Folmar hoped that Dennison and Swint would discuss fixing the property and repairing the grass, though Folmar did not provide Dennison with any monetary demand for his claims. (*Id.* 45:23-46:10.) Next, Terra highlights the late summer 2008 tour of Folmar's property where Dennison was present along with two of Terra's employees. Dennison's role during the tour was to assist Folmar in explaining the damage to Terra's employees, though Dennison believed himself to be

acting as a third-party. (Dennison Dep. 48:16-21.) After the tour, Dennison agreed to supply Terra with quotes for resprigging Folmar's property. (Dennison Dep. 50:11-15.) Dennison next sent a letter to Terra on December 9, 2008, in which he requested an "immediate settlement" of Folmar's agreement to allow wastewater to spread on his land. (Doc. No. 18, Ex. E.) Finally, on December 20, 2008, Dennison emailed Terra to accept their settlement offer to Folmar. (Doc. No. 18, Ex. G.).

However, most of this summary judgment evidence does not establish that Folmar's conduct and communications, as opposed to Dennison's communications, led Terra to believe that Dennison had settlement authority from Folmar. The only situation in which Folmar's conduct and communications to Terra may have indicated that he was giving apparent authority to Dennison was the late summer 2008 tour of his property. During this tour, Folmar allowed Dennison to obtain and submit quotes for resprigging the land to Terra. However, no settlement offers appear to have been discussed, and there is no indication in Folmar's conduct suggesting that Dennison possessed the authority to engage in settlement negotiations. (Dennison Dep. 50:7-15.) Terra itself does not appear to have believed that Dennison possessed such authority because its own representative called Folmar, not Dennison, in October/November 2008 to make a settlement offer. (Brooks Aff. ¶ 21.) Dennison confirms that he had no contact with Terra between October and December 2008. (Dennison Dep. 56:16-18.)

The other evidence submitted by Terra consists of *Dennison's* communications to Terra. An agent's representations about his authority, however, cannot be considered in determining apparent authority. *See Suarez*, 35 S.W.3d at 272; *Disney Enterprises*, *Inc.*, 981 S.W.2d at 30. Further, there is no indication that Terra ascertained the fact and scope of Dennison's authority to accept the settlement offer. *See Suarez*, 35 S.W.3d at 272; *Disney Enterprises*, *Inc.*, 981 S.W.2d

at 30. Indulging every inference and doubt in favor of Folmar, we hold that the evidence does not conclusively establish an affirmative manifestation by Folmar toward Terra indicating that Folmar provided Dennison with the authority to settle with Terra. *See Ebner*, 27 S.W.3d at 301. Though Folmar may have allowed Dennison to provide assistance in his dealings with Terra, this does not establish, as a matter of law, that Terra was led to believe that Dennison was clothed with authority to settle Folmar's claims. Thus, genuine issues of material fact exist as to whether Dennison possessed apparent authority to act as Folmar's agent.

### 3. Ratification

"Ratification may occur when a principal, though he had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge." *Land Title Co. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980). "The critical factor in determining whether a principal has ratified an unauthorized act by his agent is the principal's knowledge of the transaction and his actions in light of such knowledge." *Id.* Terra contends that, even if Dennison did not possess agent authority or exceeded the scope of his authority, Folmar ratified the settlement agreement by accepting delivery of seed in accordance with the settlement agreement.

The summary judgment evidence, however, does not establish that Folmar acquired full knowledge of relevant facts surrounding Dennison's December 20, 2008 email accepting the settlement offer. *See Land Title Co.*, 609 S.W.2d at 756-57. In addition, genuine issues of material fact exist regarding the date of delivery of the seed that is referred to in the settlement offer. Terra suggests, though it does not directly state, that it delivered the seed referred to in the settlement agreement *after* the settlement offer purportedly was accepted on December 20, 2008. (Brooks Aff. ¶ 24.) However, Folmar's and Dennison's references to the seed identified in the

11

settlement offer suggest that the seed was delivered to Folmar's property many months before the settlement offer was even made.[1] (Folmar Dep. 52:2-4, 58:21-59:5, 63:13-16; Dennison Dep. 50:14-15, 50:20-21.) Thus, we cannot conclude, as a matter of law, that Folmar accepted the seed after learning of Dennison's December 20, 2008 email accepting Terra's settlement offer. We cannot hold on the basis of the summary judgment record that Folmar ratified the settlement agreement accepted by Dennison.

### B. Existence of Valid Contract

Terra contends that there are no genuine issues of material fact regarding the existence of a valid settlement agreement between itself and Folmar. Folmar denies that he accepted Terra's settlement offer.

Under Texas law, the essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston 2009, pet. denied). To prove the existence of a valid contract, a party must establish the following elements: (1) an offer; (2) an acceptance; (3) a meeting of the minds regarding the subject matter and essential terms of the contract; (4) execution and delivery of the contract with the intent that it be mutual and binding; and (5) consideration supporting the contract. *Texas Gas Utilities Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970); *Franco v. Ysleta Indep. Sch. Dist.*, __ S.W.3d __, 2009 Tex. App. LEXIS 1673 (Tex. App. El Paso Mar. 12, 2009, no pet.). Whether the parties reached an

---

[1] We note also that, if the seed referenced in the settlement offer was delivered prior to the settlement offer being made, it may be insufficient to serve as consideration for the settlement agreement. *See Chubb Lloyds Ins. Co. v. Andrew's Restoration, Inc.*, 323 S.W.3d 564, 573 (Tex. App.—Dallas 2010) ("[P]ast consideration is not competent consideration for contract formation."); *Powerhouse Prods. v. Scott*, 260 S.W.3d 693, 697 (Tex. App.—Dallas 2008, no pet.) (holding that the provision of training and confidential information prior to contract formation was insufficient to support a contract).

12

agreement is a question of fact. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston 2005, no pet.). Whether an agreement is legally enforceable, however, is a question of law. *See id.*

There exist genuine issues of material fact surrounding the existence of a valid contract between Folmar and Terra. "It is a fundamental tenet of contract law that in order to be bound by an agreement, one must be a party to it." *Suarez*, 35 S.W.3d at 274. Here, the settlement agreement—purportedly the email from Dennison on December 20, 2008 accepting Brooks's settlement offer—was not signed by Folmar or otherwise directly acknowledged by Folmar. Folmar can only be affected by the settlement agreement if Dennison's acceptance binds Folmar under agency principles. *Id.* However, because Dennison's agency authority is disputed, we cannot conclude at this juncture that Dennison's acceptance can be imputed to Folmar. Thus, we cannot hold that a valid contract exists between Folmar and Terra as a matter of law. Without a valid contract, we cannot determine whether Folmar breached the contract and whether his breach caused Terra damages. Thus, we decline to award summary judgment to Terra on its counter-claim for breach of contract.

## IV.    CONCLUSION

Based on the foregoing, Defendant Terra Renewal, LLC's ("Terra") Motion for Summary Judgment (Doc. No. 18) is **DENIED.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 14th day of February, 2011.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE